1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In Re:

SUBPOENA DUCES TECUM TO HAGENS
BERMAN SOBOL SHAPIRO LLP,

                              Movant.

No.   2:19-mc-00140 RSL

**MOTION TO QUASH THE
BANKRUPTCY TRUSTEE'S
SUBPOENA ISSUED TO NON-PARTY
HAGENS BERMAN SOBOL
SHAPIRO, LLP, IN THE MATTER OF
*IN RE BENJAMIN H. YORMAK***

**NOTE ON MOTION CALENDAR:
November 8, 2019**



1

## TABLE OF CONTENTS

2

**Page**

3  I.   INTRODUCTION ...................................................................................................1

4  II.  BACKGROUND ...................................................................................................2

5  III. ARGUMENT .........................................................................................................3

6  IV.  THE TRUSTEE'S SUBPOENA MUST BE QUASHED PURSUANT TO
7      FED. R. CIV. P. 45(D)(3)(A) ...............................................................................3

         A.   The Trustee's Subpoena Subjects The Non-Party To Undue Burden ....................3

8        B.   Nearly All Of The Documents That The Trustee's Subpoena Seeks
9             Are Protected From Disclosure By The Attorney-Client Privilege,
              Attorney Work-Product Doctrine, Or The CBL Litigation Protective
10            Order ..........................................................................................................6

11       C.   The Subpoena Must Be Quashed Because It Seeks Compliance
12            Outside The Geographical Limits Of Rule 45(c)(2)(A) .........................9

13 V.   THE COURT SHOULD ALSO QUASH THE TRUSTEE'S SUBPOENA
     DUE TO PROCEDURAL DEFICIENCIES ........................................................11

14       A.   The Trustee Did Not Give Prior Notice Of Serving The Subpoena
15            On The Non-Party To The Other Parties In The Yormak Bankruptcy.................11

         B.   The Trustee Did Not Properly Serve The Subpoena On The Non-Party...............12

16 VI.  CONCLUSION ....................................................................................................13

17

18

19

20

21

22

23

24

25

26

27

28



# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agincourt Gaming, LLC v. Zynga, Inc.*,
 2014 WL 4079555 (D. Nev. Aug. 15, 2014) ...........................................................................3

*Amcast Indus. Corp. v. Detrex Corp.*,
 138 F.R.D. 115 (N.D. Ind. 1991) ...........................................................................................5

*In re Application for Order Quashing Dep. Subpoenas, dated July 16, 2002*,
 2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002) .......................................................................10

*Castle v. Sangamo Weston, Inc.*,
 744 F.2d 1464 (11th Cir. 1984) ..........................................................................................7, 9

*Concord Boat Corp. v. Brunswick Corp.*,
 169 F.R.D. 44 (S.D.N.Y. 1996) .........................................................................................4, 5

*Cont'l Oil Co. v. United States*,
 330 F.2d 347 (9th Cir. 1964) ................................................................................................7

*Cox v. Adm'r United States Steel & Carnegie*,
 17 F.3d 1386 (11th Cir. 1994) ...............................................................................................7

*Craig v. Kropp*,
 2018 WL 5293012 (M.D. Fla. Oct. 25, 2018) ......................................................................11

*Emergency Response Specialists, Inc v. CSA Ocean Sci., Inc.*,
 2016 WL 4487902 (N.D. Ala. Aug. 4, 2016) ......................................................................10

*Europlay Capital Advisors, LLC v. Does*,
 323 F.R.D. 628 (C.D. Cal. 2018) ...........................................................................................3

*F.D.I.C. v. Kaplan*,
 2015 WL 4744361 (M.D. Fla. Aug. 10, 2015) ....................................................................11

*Fadalla v. Life Auto. Prod., Inc.*,
 258 F.R.D. 501 (M.D. Fla. 2007).............................................................................................6

*In re Fed. Grand Jury Proceedings (FGJ-91-9), Cohen*,
 975 F.2d 1488 (11th Cir. 1992) ..........................................................................................6, 7

*Fla. Media, Inc. v. World Publ'ns, LLC*,
 236 F.R.D. 693 (M.D. Fla. 2006)....................................................................................11, 13

*Franklin v. Nat'l Gen. Assurance Co.*,
 2014 WL 12738264 (M.D. Ala. Dec. 16, 2014) ..................................................................11



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Fujikura Ltd. v. Finisar Corp.*,
   2015 WL 5782351 (N.D. Cal. Oct. 5, 2015)................................................................12

*Goldman v. Talavera Ass'n, Inc.*,
   2016 WL 11544527 (S.D. Fla. July 26, 2016).........................................................11

*Gonzalez v. RFJD Holding Co., Inc.*,
   2014 WL 12600141 (S.D. Fla. Sept. 2, 2014) .........................................................11

*Goodloe v. Daphne Util.*,
   2015 WL 4523974 (S.D. Ala. July 27, 2015), *aff'd*, 689 F. App'x 925 (11th
   Cir. 2017) ..................................................................................................................11

*In re Grand Jury Subpoena Dated Oct. 22, 2001*,
   282 F.3d 156 (2d Cir. 2002).......................................................................................8

*In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*,
   406 F. Supp. 381 (S.D.N.Y. 1975)...........................................................................7

*In re Grand Jury Subpoena (Torf/Torf Envtl. Mgmt.)*,
   357 F.3d 900 (9th Cir. 2004) .....................................................................................8

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
   908 F.3d 1259 (11th Cir. 2018) ...........................................................................6, 9

*In re Kurbatova*,
   2019 WL 2180704 (S.D. Fla. May 20, 2019).........................................................10

*Lachney v. Target Corp.*,
   2009 WL 10698747 (N.D. Ga. Mar. 23, 2009).....................................................12

*Lemberg Law LLC v. Hussin*,
   2016 WL 3231300 (N.D. Cal. June 13, 2016).........................................................7

*MAC Funding Corp. v. ASAP Graphics, Inc.*,
   2009 WL 1564236 (S.D. Fla. June 3, 2009).........................................................12

*Meide v. Pulse Evolution Corp.*,
   2019 WL 1518959 (M.D. Fla. Apr. 8, 2019).........................................................11

*Merlin Petroleum Co., Inc. v. Sarabia*,
   2016 WL 9244728 (M.D. Fla. Aug. 4, 2016).........................................................10

*In re Motion to Compel Testimony of Perry Orlando*,
   2014 WL 12628474 (S.D. Fla. Apr. 23, 2014) .....................................................12

*In re Namenda Direct Purchaser Antitrust Litig.*,
   2017 WL 3822883 (S.D.N.Y. Aug. 30, 2017)........................................................4



*In re Nathurst, III*,
    183 B.R. 953 (Bankr. M.D. Fla. 1995) ........................................................12

*Navajo Nation v. Urban Outfitters, Inc.*,
    2015 WL 11109396 (D.N.M. May 15, 2015) .................................................9

*Nevada v. J-M Mfg. Co.*,
    555 F. App'x 782 (10th Cir. 2014) .................................................................8

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
    981 F.2d 429 (9th Cir. 1992) ..........................................................................5

*NXP B.V. v. Blackberry Ltd.*,
    2014 WL 12628667 (M.D. Fla. Mar. 21, 2014) ...........................................10

*Orchestrate HR, Inc., v. Trombetta*,
    2014 WL 772859 (N.D. Tex. Feb. 27, 2014)...................................................4

*Pemberton v. Republic Serv.*,
    308 F.R.D. 195 (E.D. Mo. 2015) .................................................................7, 8

*In re Penn Cent. Commercial Paper Litig.*,
    61 F.R.D. 453 (S.D.N.Y. 1973) ......................................................................4

*Pride Family Brands, Inc. v. Carls Patio, Inc.*,
    2013 WL 4647216 (S.D. Fla. Aug. 29, 2013)...............................................12

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994)..............................................................................7

*Rivera v. Fantastic Finishes Auto Body, Inc.*
    (S.D. Fla. Aug. 4, 2009).................................................................................11

*Sandifer v. Hoyt Archery, Inc.*,
    2014 WL 3540812 (M.D. La. July 17, 2014) ...............................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    496 B.R. 713 (Bankr. S.D.N.Y. 2013)............................................................5

*Tex. Grain Storage, Inc. v. Monsanto Co.*,
    2008 WL 11411858 (W.D. Tex. Apr. 3, 2008)...............................................9

*Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*,
    2019 WL 126859 (S.D. Cal. Jan. 8, 2019)......................................................6

*Tidwell-Williams v. Nw. Ga. Health Sys., Inc.*,
    1998 WL 1674745 (N.D. Ga. Nov. 19, 1998) ..............................................12

*U.K. v. United States*,
    238 F.3d 1312 (11th Cir. 2001) ......................................................................7



*United States v. Roxworthy,*
  457 F.3d 590 (6th Cir. 2006) .................................................................8

*United Steelworkers of Am. v. Gov't of Virgin Is.,*
  2008 WL 5101681 (D.V.I. Dec. 1, 2008) ..............................................6

*Usov v. Lazar, Inc.,*
  2014 WL 4354691 (S.D.N.Y. Sept. 2, 2014) ........................................10

*Webb v. U.S. Bank, N.A.,*
  2014 WL 12461040 (N.D. Ga. Dec. 16, 2014) ......................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ..........................................................................................7

Fed. R. Civ. P. 45 ................................................................................ *passim*

MOTION TO QUASH BK SUBPOENA        - v -
Case No.
010475-11/1200759 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# I.    INTRODUCTION

Non-Party Hagens Berman Sobol Shapiro LLP ("Non-Party" or "Hagens Berman") moves to quash the subpoena issued to it by the bankruptcy trustee Robert E. Tardif, Jr. ("Trustee") in the bankruptcy proceeding of *In re Benjamin Yormak*, No. 9:15-bk-04241-FMD (Bankr. M.D. Fla. 2015) ("Yormak Bankruptcy"). The subpoena suffers from a number of procedural deficiencies described below. But beyond that, the Trustee's overbroad subpoena seeks more than 2 million pages of documents related to the class action styled *Wave Lengths Hair Salons of Florida, Inc. v. CBL & Associates Properties, Inc., et al.*, No. 2:16-cv-00206 (M.D. Fla. 2016) ("CBL Litigation"),[1] nearly all of which are subject to a protective order in the CBL Litigation overseen by Judge Paul Magnuson. In addition to those documents, the Trustee's subpoena seeks all of the Non-Party's email communications related to the CBL Litigation, which amounts to more than 100,000 emails spanning a period of more than three years, nearly all of which are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or the protective order in the CBL Litigation. The Trustee seeks to shift this significant burden onto the Non-Party even though the Trustee failed to show how any of these documents and communications are relevant to the Yormak Bankruptcy. And there is no need to shift this burden onto the Non-Party because the Trustee can seek any relevant non-privileged, non-confidential documents and communications from Benjamin Yormak ("Debtor"), who was class counsel in the CBL Litigation and is the Debtor in the Yormak Bankruptcy.

The Trustee's subpoena should also be quashed because it suffers from multiple other infirmities. The Trustee's subpoena requires the Non-Party to produce its documents more than 100 miles from where the Non-Party regularly conducts business in person. The Trustee failed to provide notice to the other parties in the Yormak Bankruptcy prior to serving the subpoena on the Non-Party. Finally, the Trustee's subpoena was not properly served on the Non-Party. Each of these are an independent bases to quash the Trustee's subpoena. For all of these reasons, the Court should exercise its authority and quash the Trustee's subpoena.

---

[1] Hagens Berman Sobol Shapiro LLP, Buckner and Miles, P.A., and the Yormak Employment & Disability Law Group served as class counsel in that lawsuit.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## II.     BACKGROUND

On April 24, 2015, the Debtor filed a voluntary petition for bankruptcy initiating the Yormak Bankruptcy. Ex. 1 at 1 (Yormak Voluntary Petition for Bankruptcy)[2].  On March 16, 2016, the Non-Party, along with Mr. Yormak and his law firm and the law firm of Buckner and Miles, P.A., filed the complaint that initiated the CBL Litigation. Ex. 2 at 1, 29 (CBL Class Action Complaint). The CBL Litigation was a hard-fought class action involving three years of active litigation the resulting benefits of which will be provided to settlement class members over the next five years. Ex. 3 (CBL Docket Sheet).  The parties briefed class certification, summary judgment, and *Daubert* challenges, and the case settled only two weeks before trial. *Id.*  During the course of discovery, the defendants produced more than 1.8 million pages of documents that they designated confidential, the parties served more than 70 third-party subpoenas resulting in the production of more than 200,000 pages of additional documents, and the parties exchanged more than 100,000 emails. *See* Ex. 4 at 3-4 (Order for Final Approval).  The Court granted final approval of the settlement on August 22, 2019. *See id.* at 1.  After settlement approval, class counsel began working with the claims administrator to distribute the settlement benefits.  As a result of that work, tens of thousands of pages of new documents have been created relating to the claims process along with thousands of emails among the attorneys involved in that process.

On September 27, 2019, the Trustee in the Yormak Bankruptcy sent a subpoena by U.S. mail to the Non-Party at its office in Seattle requesting that documents and communications in the CBL Litigation be produced 3,275 miles away at the Trustee's offices. Ex. 5 at 1-2 (Trustee's Subpoena); Ex. 6 at 1 (Mapquest).  The Trustee's subpoena appears to seek every document produced in the CBL Litigation, every communication related to that litigation, and all of the Non-Party's time records for that case. Ex. 5 at 3-4.  The Trustee gave notice of service of the subpoena to the other parties in the Yormak Bankruptcy on September 30, 2019.  Ex. 7 at 1 (Trustee's Notice of Service).

---

[2] All "Ex. __" references cited herein are to the Declaration of Thomas E. Loeser in Support of Motion to Quash the Bankruptcy Trustee's Subpoena Issued to Non-Party Hagens Berman Sobol Shapiro LLP, in the Matter of *In re Benjamin H. Yormak*.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## III.   ARGUMENT

There are multiple grounds on which the Court should quash the Trustee's subpoena. Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), a court is required to quash a subpoena that: (1) requires a person to comply beyond the geographical limits specified in Rule 45(c); (2) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (3) subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(ii)-(iv).  Here, the Trustee's subpoena should be quashed on all three grounds.  First, the Trustee's subpoena subjects the Non-Party to an undue burden by requiring the Non-Party to produce millions of pages of documents and more than 100,000 email communications, none of which are relevant to the Yormak Bankruptcy. Second, nearly all of the requested documents and emails are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or the protective order entered by the court in the CBL Litigation.  Third, the Trustee's subpoena requires the Non-Party to produce documents to the Trustee at a location more than 100 miles from where the Non-Party regularly transacts business in person.  Fed. R. Civ. P. 45(c)(2). Finally, the Trustee's subpoena should also be quashed because the Trustee did not give the parties in the Yormak Bankruptcy prior notice of service of the subpoena on the Non-Party, nor did the Trustee properly serve the subpoena on the Non-Party.[3]

## IV.   THE TRUSTEE'S SUBPOENA MUST BE QUASHED PURSUANT TO FED. R. CIV. P. 45(D)(3)(A)

### A.   The Trustee's Subpoena Subjects The Non-Party To Undue Burden

The Trustee's subpoena seeks every document and communication related to the CBL Litigation, thereby subjecting the Non-Party to a significant undue burden in violation of Federal Rule of Civil Procedure 45(d)(3)(A)(iv).  To determine whether the subpoena presents an undue burden, the Court must consider the following factors: (1) relevance of the information

---

[3] This Court has jurisdiction to quash the Trustee's subpoena.  *See* Fed. R. Civ. P. 45(d)(3).  The place of compliance "is tethered to the location of the subpoenaed person." *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) (discussing lack of basis to find a place of compliance in "some other district where the subpoenaed person contends the responsive documents are located, or where the subpoenaed party with possession of the documents is required to comply" over a subpoenaed person's location); *see also Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (finding the court lacked jurisdiction to hear a challenge to subpoena to a nonparty, where court was outside of where nonparty had its primary place of business).



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  requested; (2) the need of the party for the documents; (3) the breadth of the document request;

2  (4) the time period covered by the request; (5) the particularity with which the party describes the

3  requested documents; and (6) the burden imposed. *Orchestrate HR, Inc., v. Trombetta*, 2014 WL

4  772859, at *3 (N.D. Tex. Feb. 27, 2014).  Additionally, if the person to whom the document

5  request is made is a non-party, the court may consider the expense and inconvenience to the non-

6  party. *Id.* (citations omitted).  "Litigants and courts are instructed to be especially solicitous of

7  non-party targets of subpoenas." *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL

8  3822883, at *4 (S.D.N.Y. Aug. 30, 2017) (citations omitted).  Here, each of these factors weighs

9  in favor of a finding of undue burden on the Non-Party.

10        First, all of the Trustee's subpoena requests relate to the CBL Litigation, which is a

11  complex class-action lawsuit involving the resale of electricity at certain of the defendants'

12  malls. *See* Ex. 2; Ex. 5 at 3-4.  The Trustee cannot establish any nexus between the CBL

13  Litigation and the Yormak Bankruptcy that would make all of the documents and

14  communications in the CBL Litigation relevant. *See Concord Boat Corp. v. Brunswick Corp.*,

15  169 F.R.D. 44, 50 (S.D.N.Y. 1996) (citations omitted) (subpoenas that "sweepingly pursue []

16  material with little apparent or likely relevance to the subject matter . . . run [] the greater risk of

17  being found overbroad and unreasonable.").  Furthermore, the Trustee cannot establish any need

18  for these documents from the Non-Party as the Trustee can obtain any arguably relevant non-

19  privileged and non-confidential documents directly from the Debtor, as he was counsel of record

20  in the CBL Litigation. *See In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 467

21  (S.D.N.Y. 1973) (citations omitted) ("The rationale for permitting an independent action for

22  production of documents . . . from a nonparty witness presumes a situation in which the items

23  sought are unavailable from a party . . . or are not otherwise obtainable by the movant's own

24  efforts.").  As a party to the Yormak Bankruptcy, the Debtor is better situated than the Non-Party

25  to shoulder the burden of identifying relevant documents and communications requested by the

26  Trustee and producing them.

27        Second, the overbreadth of the Trustee's subpoena is exhibited by the sheer volume of

28  documents and communications it seeks from the Non-Party.  None of the Trustee's subpoena

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

requests are time limited and span, at a minimum, the full three-years of the CBL Litigation. And, the requests are not narrowly tailored. *See Amcast Indus. Corp. v. Detrex Corp.,* 138 F.R.D. 115, 121 (N.D. Ind. 1991) (holding that document request that was unlimited as to time frame, as well as to the types of writings sought, fell "far short" of fulfilling requirement that documents be described with reasonable particularity). Rather, the Trustee's subpoena seeks more than 1.8 million pages of confidential documents produced by the defendants in the CBL Litigation, more than 200,000 pages of documents produced by third-parties, and more than 10,000 pages of documents related to the claims process. Ex. 5 at 3-4; Ex. 4 at 3-4. The Trustee's subpoena goes even further, asking for over three years of email correspondence as well, which constitutes more than 100,000 email communications between or among class counsel and opposing counsel. Ex. 5 at 3-4; *see Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.,* 981 F.2d 429, 438-39 (9th Cir. 1992) (finding a document request for millions of pages, only a fraction of which could be deemed relevant, to be unduly burdensome); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 496 B.R. 713, 726 (Bankr. S.D.N.Y. 2013) (finding the burden and expense of turning over millions of pages of documents outweighed any benefit from requested material). The volume of documents and communications sought by the Trustee, none of which are relevant to the Yormak Bankruptcy, reflects the overbreadth and burden of the subpoena on the Non-Party.

The burden and costs imposed on the Non-Party by the Trustee's subpoena would be substantial. Responding to the Trustee's subpoena would require the Non-Party to review more than two million pages of documents and 100,000 emails and then log many of them on a privilege log. *See* Ex. 5 at 3-4; Ex. 4 at 3-4. Responding to the subpoena would be an expensive undertaking requiring significant and substantial resources and require the Non-Party to hire numerous lawyers to accomplish this task. *See Concord Boat,* 169 F.R.D. at 53-54 (quashing a subpoena where requests for voluminous documents were overbroad and considering burden on employees to research, analyze, and compile documents for request).

Thus, the Non-Party is significantly over-burdened by the Trustee's subpoena that seeks millions of pages of documents and more than 100,000 email communications, none of which

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  are relevant to the Yormak Bankruptcy.  Ex. 5 at 3-4; Ex. 4 at 3-4.  Courts have quashed

2  subpoenas that were far less burdensome than the subpoena issued by the Trustee in this case.

3  *See, e.g.*, *United Steelworkers of Am. v. Gov't of Virgin Is.*, 2008 WL 5101681, at *2 (D.V.I.

4  Dec. 1, 2008) (quashing a subpoena due to breadth of document request which included at least

5  62,000 documents).  The Court should follow other courts facing this issue and quash the

6  subpoena.  *See Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*, 2019 WL 126859, at *2

7  (S.D. Cal. Jan. 8, 2019) (quashing a subpoena due to the volume and breadth of requests where

8  millions of documents were sought).

9  **B.    Nearly All Of The Documents That The Trustee's Subpoena Seeks Are Protected
         From Disclosure By The Attorney-Client Privilege, Attorney Work-Product
10        Doctrine, Or The CBL Litigation Protective Order**

11         The Trustee's subpoena should be quashed because nearly every document and

12  communication it seeks is protected from disclosure by the attorney-client privilege, the attorney

13  work-product privilege, or the confidentiality order in the CBL Litigation.  A non-party

14  subpoenaed to produce documents may move a court to quash a subpoena that "requires

15  disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R.

16  Civ. P. 45(d)(3)(A)(iii).  Where it is apparent from the face of a subpoena that a vast majority of

17  the information sought is privileged, a privilege log is not required and the subpoena may be

18  quashed in its entirety.  *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 908 F.3d 1259, 1267 (11th

19  Cir. 2018) (affirming district court's order quashing subpoena based on privilege and not

20  requiring party to produce a privilege log).  In determining whether a subpoena seeking protected

21  information should be quashed, courts must balance the requesting party's need for the discovery

22  against the responding party's interest in keeping the requested information confidential.

23  *Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing *Farnsworth v.

24  Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).  In addition, "[t]he status of a

25  person as a non-party is a factor that weighs against disclosure."  *Fadalla*, 258 F.R.D. at 504

26  (citations omitted).

27         The attorney-client privilege protects confidential communications between the lawyer

28  and the client, and it can only be waived by the client.  *In re Fed. Grand Jury Proceedings (FGJ-*

MOTION TO QUASH BK SUBPOENA        - 6 -
Case No.
010475-11/1200759 V1

1   *91-9), Cohen*, 975 F.2d 1488, 1492 (11th Cir. 1992) (citations omitted).  Several courts have

2   quashed subpoenas for requesting documents subject to the attorney-client privilege.  *See Rhone-*

3   *Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) (quashing subpoenas

4   for seeking documents protected from disclosure by the attorney client privilege); *Cont'l Oil Co.*

5   *v. United States*, 330 F.2d 347, 350 (9th Cir. 1964) (holding that the attorney-client privilege

6   required quashing subpoenas); *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *6 (N.D. Cal.

7   June 13, 2016) (quashing subpoenas that sought attorney-client privilege materials); *see also In*

8   *re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F. Supp. 381, 394 (S.D.N.Y.

9   1975) (declining to compel production of documents subject to attorney-client privilege).

10          The work-product doctrine is even broader than the attorney-client privilege because its

11   protections extend beyond communications between the attorney and client.  *Pemberton v.*

12   *Republic Serv.*, 308 F.R.D. 195, 201 (E.D. Mo. 2015) (citing *United States v. Nobles*, 422 U.S.

13   225, 238 n.11 (1975)).  In order to obtain work product "prepared in anticipation of litigation or

14   for trial by or for another party or its representative," the party seeking discovery must show a

15   substantial need for the materials and an undue hardship in obtaining them.  *See* Fed. R. Civ. P.

16   26(b)(3); *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984) (finding that a

17   party seeking work-product must show "substantial need" and "undue burden").  A "substantial

18   need" depends on the facts and circumstances of the individual case but exceeds "mere tangential

19   relevance" to the case.  *Pemberton*, 308 F.R.D. at 202-03.  There is no "substantial need" for

20   documents or other materials that are not essential to the requesting party's *prima facie* case.  *Id.*

21   (citations omitted).  Regardless, even meeting the required showing does not suffice when

22   considering "opinion work product."  *U.K. v. United States*, 238 F.3d 1312, 1322 (11th Cir.

23   2001) (explaining that substantial need and undue hardship are insufficient to overcome

24   protections for opinion work product).  Opinion work product, or an attorney's mental

25   impressions, conclusions, opinions, and legal theories, enjoy "nearly absolute immunity" and can

26   be discovered only in "very rare and extraordinary circumstances."  *Cox v. Adm'r United States*

27   *Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (citations omitted).

28

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   And, various courts have quashed subpoenas for requesting documents protected by the

2   work-product doctrine.  *See Nevada v. J-M Mfg. Co.*, 555 F. App'x 782 (10th Cir. 2014)

3   (affirming lower court's granting of a motion to quash based on work product); *United States v.*

4   *Roxworthy*, 457 F.3d 590 (6th Cir. 2006) (granting a motion to quash where request included

5   work-product documents); *In re Grand Jury Subpoena (Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900

6   (9th Cir. 2004) (reversing and remanding district court's order denying motion to quash based on

7   work-product); *In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156 (2d Cir. 2002)

8   (granting motion to quash based on work-product doctrine); *Pemberton*, 308 F.R.D. at 202-03

9   (quashing a subpoena requesting materials protected by work-product doctrine).

10   Here, nearly all of the communications the Trustee's subpoena seeks are protected from

11   disclosure by an applicable privilege.  For example, of the 100,000 emails between or among

12   class counsel in the CBL Litigation, nearly all of those would be protected by the attorney-client

13   privilege, attorney-work product doctrine (including opinion work-product), or the CBL

14   Litigation protective order.[4] Specifically, nearly all of those communications are relaying

15   information from the client (attorney client-privilege), discussing litigation strategy (attorney

16   work-product privilege), revealing counsel's mental impressions and opinions (opinion work-

17   product privilege), or analyzing the defendants' confidential materials (CBL Litigation protective

18   order, attorney work-product privilege, and opinion work-product privilege).  Similarly, the

19   communications between co-counsel and opposing counsel in the CBL Litigation would likely

20

21   [4] *See* Ex. 8 (*Confidentiality Order* (Protective Order)).  The Confidentiality Order covers:

22      [C]opies, excerpts or summaries, compilations, designations and portions thereof, of any documents
        and things, deposition transcripts, videotapes, deposition exhibits, testimony and oral conversation,

23      responses to requests to produce documents or other things, interrogatory answers, responses to
        requests for admissions, and subpoenas and any other discovery authorized by the Federal Rules of

24      Civil Procedure, as well as any other disclosed information (collectively "Confidential
        Information") **produced by any Party** or non-party ("Producing Party") **to any other Party** or non-

25      party ("Receiving Party") in the above-captioned case, Case No.  2:16-cv-00206-SPC-MRM
        pending in the United States District Court for the Middle District of Florida (the "Action").

26   *See id.* at 1 (emphasis added). The Confidentiality Order also states that the term "document" is to be afforded its
     "broadest possible meaning."  *Id.*  The Confidentiality Order covers a broad array of documents from the CBL

27   Litigation.  Further, the Confidentiality Order specifies that the information that is the subject of the Confidentiality
     Order "may not be used for any other purpose, including but not limited to" the prosecution or defense of other actions
     not subject to the Confidentiality Order, or any purpose other than the CBL Litigation.  *See id.* at 2.  Thus, documents

28   that are covered by the Confidentiality Order cannot be shared.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   be covered by the CBL Protective Order as they typically discussed or involved defendants'

2   confidential documents.  *See* Ex. 8.  On this basis alone, the subpoena should be quashed for

3   intentionally seeking all of these privileged communications, and the Non-Party should not be

4   required to produce a voluminous privilege log.  *See Jordan*, 908 F.3d at 1267 (privilege log not

5   required when vast majority of subpoena request is privileged).  Furthermore, the Trustee cannot

6   establish any need, let alone a "substantial need," for these documents as it is not clear how any

7   of them are remotely relevant to the Yormak Bankruptcy.  *See Castle*, 744 F.2d at 1467

8   (explaining that a party seeking protected work product must show a substantial need and an

9   undue hardship).  And, the Trustee can show no undue hardship in obtaining these documents

10   because he can obtain relevant non-privileged, non-confidential documents, if any, from the

11   Debtor in the Yormak Bankruptcy.  *See id.*

12          Additionally, the Trustee's Subpoena appears to seek every document produced in the

13   CBL Litigation.  Ex. 5 at 3-4.  Most, if not all, of the 1.8 million documents produced by CBL

14   along with the 200,000 pages of third-party documents were designated confidential by the

15   producing party and are therefore protected from disclosure by the CBL Litigation Protective

16   Order.  Ex. 4 at 3-4; Ex. 8.  Those documents purportedly involve CBL's confidential and

17   proprietary information.  Ex. 8.  Accordingly, the Court should also quash the subpoena on those

18   grounds.  *See Navajo Nation v. Urban Outfitters, Inc.*, 2015 WL 11109396 (D.N.M. May 15,

19   2015) (not requiring recipient of subpoena to produce a report subject to a confidentiality order

20   entered by another court in a separate case); *Tex. Grain Storage, Inc. v. Monsanto Co.*, 2008 WL

21   11411858 (W.D. Tex. Apr. 3, 2008) (quashing a subpoena seeking information subject to valid

22   protective orders issued by other courts).  In sum, the Trustee's subpoena encompasses millions

23   of documents and communications that are subject to either a privilege or a protective order that

24   the Trustee cannot overcome and the Court should exercise its authority to quash the subpoena.

25   **C.      The Subpoena Must Be Quashed Because It Seeks Compliance Outside The
            Geographical Limits Of Rule 45(c)(2)(A)**

26          The Trustee's subpoena violates the geographical limitations set out in Federal Rule of

27   Civil Procedure 45(c). A subpoena may only command the production of documents,

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

electronically stored information, or other tangible things at a place "within 100 miles of where the person resides, is employed, or regularly transacts business in person." *See* Fed. R. Civ. P. 45(c)(2)(A). When a subpoena requires compliance outside of the 100-mile zone, it should be quashed. *See In re Kurbatova*, 2019 WL 2180704, at *3 (S.D. Fla. May 20, 2019) (quashing the subpoena because it required compliance more than 100 miles away); *Emergency Response Specialists, Inc v. CSA Ocean Sci., Inc.*, 2016 WL 4487902, at *8 (N.D. Ala. Aug. 4, 2016) (same); *Merlin Petroleum Co., Inc. v. Sarabia*, 2016 WL 9244728 (M.D. Fla. Aug. 4, 2016) (same); *Webb v. U.S. Bank, N.A.*, 2014 WL 12461040, at *2 (N.D. Ga. Dec. 16, 2014) (same); *Usov v. Lazar, Inc.*, 2014 WL 4354691, at *16 (S.D.N.Y. Sept. 2, 2014) (same); *Sandifer v. Hoyt Archery, Inc.*, 2014 WL 3540812, at *4 (M.D. La. July 17, 2014) (finding subpoena invalid where it required production outside of 100 miles of subpoenaed non-party); *NXP B.V. v. Blackberry Ltd.*, 2014 WL 12628667 (M.D. Fla. Mar. 21, 2014) (quashing subpoena where it required witnesses to appear outside 100 miles of where they resided); *In re Application for Order Quashing Deposition Subpoenas, dated July 16, 2002*, 2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002) (quashing a subpoena requiring compliance outside of 100 miles from non-party's residence).

Here, the subpoena requires the Non-Party to produce the responsive documents at the Trustee's law firm located at 1601 Jackson Street, Suite 105, Fort Myers, Florida 33901. Ex. 5 at 1. The Non-Party's main office where the subpoena was mailed is located in Seattle and is where the Non-Party regularly transacts business in person. The Trustee's subpoena commands compliance 3,275 miles from the Non-Party's regular place of business. Ex. 6 at 1. Accordingly, the Trustee's subpoena must be quashed because it seeks compliance beyond than 100-mile zone of compliance permitted under Fed. R. Civ. P. 45(c)(2)(A). *See In re Kurbatova*, 2019 WL 2180704, at *3 (finding subpoena "must be" quashed for not complying with 100-mile rule).



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   THE COURT SHOULD ALSO QUASH THE TRUSTEE'S SUBPOENA DUE TO PROCEDURAL DEFICIENCIES

Aside from the bases in Federal Rule of Civil Procedure 45(d)(3)(A) that require the Court to quash the Trustee's subpoena, the Court should also quash the Trustee's subpoena because it suffers from other procedural deficiencies in the notice and service of the subpoena on the Non-Party. Rule 45(a)(4) requires that notice be provided to the other parties in the case prior to serving a subpoena on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4). Rule 45(b)(1) requires that a subpoena be served by delivering a copy to the named person. Fed. R. Civ. P. 45(b)(1). Here, the Trustee did not give the other parties in the Yormak Bankruptcy prior notice of serving the subpoena on the Non-Party and service of the subpoena on the Non-Party by U.S. mail was improper. Accordingly, the Court should quash the subpoena on these additional grounds.

### A.   The Trustee Did Not Give Prior Notice Of Serving The Subpoena On The Non-Party To The Other Parties In The Yormak Bankruptcy

The Trustee failed to comply with the prior notice requirement of Federal Rule of Civil Procedure 45(a)(4). Rule 45(a)(4) is "crystal clear" that if a subpoena commands the production of documents, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party in the litigation. Fed. R. Civ. P. 45(a)(4); *Goodloe v. Daphne Util.*, 2015 WL 4523974, at *3 (S.D. Ala. July 27, 2015), *aff'd*, 689 F. App'x 925 (11th Cir. 2017). The prior notice provision is mandatory and courts have exercised their authority to quash subpoenas when the serving party fails to provide prior notice to the other parties in the litigation. *Meide v. Pulse Evolution Corp.*, 2019 WL 1518959, at *6 (M.D. Fla. Apr. 8, 2019) (quashing a subpoena where prior notice not given); *Craig v. Kropp*, 2018 WL 5293012 (M.D. Fla. Oct. 25, 2018) (same); *Goldman v. Talavera Ass'n, Inc.*, 2016 WL 11544527, at *2 (S.D. Fla. July 26, 2016) (same); *F.D.I.C. v. Kaplan*, 2015 WL 4744361, at *3 (M.D. Fla. Aug. 10, 2015) (same); *Franklin v. Nat'l Gen. Assurance Co.*, 2014 WL 12738264, at *2 (M.D. Ala. Dec. 16, 2014) (same); *Gonzalez v. RFJD Holding Co., Inc.*, 2014 WL 12600141, at *2 (S.D. Fla. Sept. 2, 2014) (same); *Rivera v. Fantastic Finishes Auto Body, Inc.*, at *2 (S.D. Fla. Aug. 4,

H B   HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

2009) (same); *Fla. Media, Inc. v. World Publ'ns, LLC*, 236 F.R.D. 693, 695 (M.D. Fla. 2006) (same).

Here, the Trustee failed to serve the other parties in the Yormak Bankruptcy with notice and a copy of the subpoena prior to serving the Non-Party with the subpoena.  The Trustee's subpoena is dated September 27, 2019, and contains a proof of service of the subpoena on the Non-Party of the same date.  Ex. 5 at 2.  Yet, the Trustee's Notice of Serving Subpoenas to the other parties in the Yormak Bankruptcy is dated three days later on September 30, 2019.  Ex. 7 at 1.  Therefore, because the Trustee provided notice to the parties in the Yormak Bankruptcy after service of the subpoena on the Non-Party, the Trustee failed to comply with Federal Rule of Civil Procedure 45(a)(4).  Accordingly, the Trustee's subpoena should be quashed.

**B.**    **The Trustee Did Not Properly Serve The Subpoena On The Non-Party**

The Trustee's subpoena should also be quashed because it was not properly served on the Non-Party.  Rule 45(b)(1) requires that a subpoena be served by "delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1).  Numerous courts have held that Rule 45(b)(1) requires personal delivery directly to the person named in the subpoena and have rejected or quashed subpoenas that have not been personally delivered.  *See Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015) (holding "The majority of courts understand "delivering" to require personal service of the subpoena. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881-LB, 2015 WL 848554, at *4 (N.D. Cal. Jan. 28, 2015) (citation omitted); *Spencer*, 2006 WL 2734284, at *1 (citations omitted); *Newell v. Cnty. of San Diego*, No. 12-cv-1696-GPC (BLM), 2013 WL 4774767, at *2 (S.D. Cal. Sept. 5, 2013) (citations omitted); *see also* Wright & Miller, 9A Fed. Practice & Proc. § 2454 (3d ed. 2015) ("The longstanding interpretation of Rule 45 has been that personal service of the subpoena is required.")").  Even those courts that have allowed service by mail have only done so when personal service was first attempted, but failed.  *See Fujikura*, 2015 WL 5782351, at *5.[5]  Here,

---

[5] *See also In re Motion to Compel Testimony of Perry Orlando*, 2014 WL 12628474, at *2-3 (S.D. Fla. Apr. 23, 2014) (rejecting subpoena served on fiancé); *Pride Family Brands, Inc. v. Carls Patio, Inc.*, 2013 WL 4647216, at *7-8 (S.D. Fla. Aug. 29, 2013) (quashing a subpoena sent through mail); *MAC Funding Corp. v. ASAP Graphics, Inc.*, 2009 WL 1564236 (S.D. Fla. June 3, 2009) (finding the court was powerless to enforce subpoenas that were

1    the Trustee served the subpoena on the Non-Party by regular U.S. mail.  Ex. 5 at 2.  That fails to

2    satisfy the requirements of Fed. R. Civ. P.  45(b)(1).  *See Fla. Media*, 236 F.R.D. at 694.

3    Accordingly, the Trustee's subpoena should be quashed on this ground as well.  *See id.*

4                                    **VI.    CONCLUSION**

5           For the foregoing reasons, the Non-Party respectfully requests that the Court quash the

6    Trustee's subpoena.

7

8    DATED this 21st day of October, 2019.              Respectfully submitted,

9                                                       HAGENS BERMAN SOBOL SHAPIRO LLP

10

11                                                      By */s/ Thomas E. Loeser*
                                                           Thomas E. Loeser (*pro hac vice*)
12                                                      1301 Second Avenue, Suite 2000
                                                        Seattle, WA 98101
13                                                      Tel: (206) 623-7292
                                                        Fax: (206) 623-0594
14                                                      toml@hbsslaw.com

15                                                      ***Attorneys for Non-Party Hagens Berman Sobol Shapiro LLP***

16

17

18

19

20

21

22

23

24

25

26    _____
      defective due to being sent through mail); *Lachney v. Target Corp.*, 2009 WL 10698747 (N.D. Ga. Mar. 23, 2009)
27    (finding a subpoena invalid where it was not properly served because it was sent via certified mail); *Tidwell-*
      *Williams v. Nw. Ga. Health Sys., Inc.*, 1998 WL 1674745, at *7 (N.D. Ga. Nov. 19, 1998) (finding improper service
      where subpoena was faxed or mailed); *In re Nathurst, III*, 183 B.R. 953, 955 (Bankr. M.D. Fla. 1995) (stating a
28    subpoena cannot be served by mail, "even if sent by certified mail").

MOTION TO QUASH BK SUBPOENA              - 13 -
Case No.
010475-11/1200759 V1

1

## <u>CERIFICATE OF SERVICE</u>

2    The undersigned attorney certifies that on the 21st day of October, 2019, I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system.  I also sent a copy of

3 the foregoing to the following party in the manner indicated:

4 **<u>U.S. Mail</u>**

Robert E. Tardif, Jr.

5 P.O. Box 2140

Fort Myers, FL  33902

6

7

           */s/ Thomas E. Loeser*

8            Thomas E. Loeser

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO QUASH BK SUBPOENA    - 14 -

Case No.

010475-11/1200759 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594